**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000068**
**14-JUN-2019**
**08:11 AM**

NO. CAAP-17-0000068

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DEXTER J. SMITH, Petitioner-Appellant, v.
STATE OF HAWAI'I, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(S.P.P. NO. 16-1-0009 (CR. NO. 12-1-1834))

SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Fujise and Chan, JJ.)

Petitioner-Appellant Dexter J. Smith (Smith) appeals
*pro se* from the January 12, 2017 Circuit Court of the First
Circuit (Circuit Court)[1] Second Amended Order Dismissing Amended
Petition to Vacate, Set Aside, or Correct Judgment Or to Release
Petitioner from Custody Without a Hearing.  The court found
allegations and arguments contained within Smith's Hawai'i Rules
of Penal Procedure (HRPP) Rule 40 "Petition To Vacate, Set Aside,
or Correct Judgment or To Release Petitioner For [sic] Custody"
(Petition) to be without merit, patently frivolous, and without a
trace of support in the record or in Smith's submissions.  In the
underlying case, Smith was convicted of Kidnapping in violation
of Hawaii Revised Statutes (HRS) § 707-720(1)(d) (2014) and/or

---

[1]     The Honorable Christine E. Kuriyama presided.

HRS § 707-720(1)(e) (2014),[2] and after a jury trial was sentenced to twenty years of incarceration.[3]

In this Rule 40 appeal, Smith contends the Circuit Court erred by denying his Petition because he received ineffective assistance of appellate counsel in his direct appeal.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Smith's appeal as follows and affirm.

1. Smith contends that he received ineffective assistance of appellate counsel because appellate counsel failed to raise what we have grouped for clarity, two appealable issues. Smith argues that appellate counsel failed to raise that: (1) there was insufficient evidence to support his conviction for Kidnapping; and (2) the State committed prosecutorial misconduct.

Ordinarily, an issue that could have been raised on direct appeal but was not, would be considered waived under HRPP Rule 40(a)(3). Adams v. State, 103 Hawai'i 214, 220, 81 P.3d 394, 400 (2003). HRPP 40(a)(3) provides:

> (3) Inapplicability. Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

However, the issue of ineffective assistance of appellate counsel could not have been raised until after the direct appeal, and is thus properly before this court. Briones v. State, 74 Haw. 442,

---

[2]     HRS § 707-720, provides, in relevant part, "(1) A person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to: . . . (d) Inflict bodily injury upon that person or subject that person to a sexual offense; [or] . . . (e) Terrorize that person or a third person[.]"

By motion of the State, the sexual offense language was stricken from the indictment.

[3]     The Honorable Patrick W. Border presided over the trial.

2

460, 848 P.2d 966, 975 (1993) (citation omitted).  Smith must establish:  (1) his appellate counsel omitted an appealable issue, and (2) in light of the entire record, the status of the law, and the space and time limitations inherent in the appellate process, a reasonably competent attorney would not have omitted that issue.  Batalona v. State, 142 Hawaiʻi 84, 98, 414 P.3d 136, 150 (2018).  "[A]n 'appealable issue' is 'an error or omission by counsel that results in the withdrawal or substantial impairment of a potentially meritorious defense."  Id., (quoting Briones, 74 Haw. at 465-66, 848 P.2d at 977).  Each of the two issues that Smith raises will be analyzed to determine whether he received ineffective assistance of appellate counsel.

Smith argues he received ineffective assistance of appellate counsel because counsel failed to challenge the sufficiency of the evidence of Kidnapping.

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury.  The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Richie, 88 Hawaiʻi 19, 33, 960 P.2d 1227, 1241 (1998) (quoting State v. Quitog, 85 Hawaiʻi 128, 145, 938 P.2d 559, 576 (1997)).  Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.  State v. Timoteo, 87 Hawaiʻi 108, 112-13, 952 P.2d 865, 869-70 (1997).

Smith was charged with Kidnapping under HRS § 707-720(1)(d) and (e), which provide, in relevant part, "(1) A person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to: . . . (d) Inflict bodily injury upon that person[, or] . . . (e) Terrorize that person or a third person[.]"  "A person acts intentionally with respect to his conduct when it is his conscious object to engage in such conduct" or "with respect to a result of his conduct when it is his conscious object to cause such a result."  HRS § 702-206(1)(a) and (c) (2014).  "A person acts knowingly with respect to his conduct when he is aware that

his conduct is of that nature" or "with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result." HRS § 702-206(2)(a) and (c). "Restrain" is defined, *inter alia*, as to "restrict a person's movement in such a manner as to interfere substantially with the person's liberty . . . [b]y means of force, threat, or deception[.]" HRS § 707-700 (2014). Under HRS § 707-700, "'Bodily injury' means physical pain, illness, or any impairment of physical condition." "'Intent to terrorize' has not been defined by the legislature." State v. Flores, 131 Hawai'i 43, 54, 314 P.3d 120, 131 (2013) (citing State v. Yamamoto, 98 Hawai'i 208, 217, 46 P.3d 1092, 1101 (App. 2002)).

Thus, the State was required to show: (a) Smith knowingly or intentionally restrained the complaining witness (CW); and (b) Smith did so with the intent to inflict physical pain, illness, or any impairment of physical condition on CW, or with the intent to terrorize CW or a third person.

(a) The supreme court has held that a person being thrown to the ground even for a short duration can constitute a substantial interference with the person's liberty and, accordingly, a prohibited restraint. State v. Hernandez, 61 Haw. 475, 478-79, 605 P.2d 75, 77-78 (1980). Here, the State produced substantial evidence of knowing or intentional restraint in the form of the witness testimony of CW. CW testified Smith ran at her when she was riding her bike, grabbed for her face, threw her in the bushes, and pinned her to the ground. Taken in the light most favorable to the State this is substantial evidence of restraint. As for intent, "it is an elementary principle of law that intent may be proved by circumstantial evidence[.]" Id. Under these circumstances the jury could infer that Smith intentionally or knowingly restrained CW. Thus, the State produced sufficient evidence to support the first essential element of Kidnapping.

(b) As to restraint with the intent to inflict bodily injury on CW or to terrorize CW, CW testified that Smith never said a word during the incident. Thus, there was no direct evidence of Smith's intent. However, intent may be proved by

4

circumstantial evidence. Hernandez, 61 Haw. at 479, 605 P.2d at 78. Circumstantial evidence of Smith's intent to cause bodily injury can be inferred from his actually causing bodily injury. CW testified that Smith broke the cartilage in her nose, gave her black eyes, bruised her body, and gave her scrapes and scratches. This account was supported by photographs entered as exhibits documenting the harm. As to evidence of Smith's intent to terrorize, circumstantial evidence of Smith's intent to terrorize can be inferred from his actually terrorizing CW. CW testified numerous times she thought Smith was trying to kill her. Thus, the State produced substantial evidence that Smith restrained CW with the intent to inflict bodily injury on or terrorize CW.

Smith seeks to challenge the sufficiency of the evidence by pointing to inconsistencies between CW and the percipient witness Caesar Pacis's (Pacis) testimony. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." State v. Jenkins, 93 Hawai‘i 87, 101, 997 P.2d 13, 27 (2000) (citations, internal quotation marks, and brackets omitted). Therefore, Smith's contentions are without merit.

2. Smith asserts that appellate counsel was ineffective for not raising prosecutorial misconduct committed at trial. See, State v. Rogan, 91 Hawai‘i 405, 984 P.2d 1231 (1999). "Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction." Rogan, id. at 412, 984 P.2d at 1238 (citation and internal quotation marks omitted).

Smith argues a series of alleged inconsistencies between the State's opening statement and closing argument and witness testimony that he maintains amount to prosecutorial misconduct. First, Smith challenges the State's description during its opening statement that CW was "lifted off the ground[.]" The opening statement provides an opportunity for

counsel to advise and outline for the jury the facts and questions in the matter before them, and the State should only refer in the opening statement to evidence that it has "a genuine good-faith belief" will be produced at trial. State v. Valdivia, 95 Hawai'i 465, 480, 24 P.3d 661, 676 (2001) (citations omitted). At trial, CW testified that Smith "threw me in the bushes[,]" and "I don't recall being picked up or anything; but I know that my feet were off of the ground[.]" Smith asserts that CW's statement, "I don't recall being picked up[,]" contradicts her other statements. This claim is without merit. Thus, because the State correctly stated what would be produced at trial, the remarks were not improper.

Second, Smith further alleges the State misstated the evidence during its opening statement by declaring, "[Pacis] yells at the defendant, What the fuck are you trying to do? He yells it over and over and loudly." Where alleged prosecutorial misconduct is the failure of the prosecutor to prove or attempt to prove matters referred to in opening statements, the burden is on the defendant to show bad faith on the part of the prosecutor, unless the fundamental rights of the defendant were substantially prejudiced. Valdivia, 95 Hawai'i at 480-81, 24 P.3d at 676-77 (citing State v. Moore, 82 Hawai'i 202, 213, 921 P.2d 122, 133 (1996)). At trial, the State elicited the following exchange:

[Deputy Public Attorney (DPA)]: What did you shout at him?

[Pacis]:    Would you like me to say it?

[DPA]:    I would like you to tell us, yes.

[Pacis]:    What the fuck are you doing, you mother fucker? He freaked out. I was loud and I shouted. He freaked out. I didn't -- he freaked out. That's how I shouted at him. He just stand up with the bulging eye, started running to his car.

[DPA]:    And when you -- when you yelled that, did you yell it loudly, you said?

[Pacis]:    Very loud. That was my weapon.

[DPA]:    And did you yell it once?

[Pacis]:    Yeah, straight.

[DPA]:    Or was it multiple times?

[Pacis]:    (No audible response).

```
[DPA]:        I'm sorry. Was that "yes" or "no"?

[Pacis]:      What was that again?

[DPA]:        Did you yell it once or multiple times?

[Pacis]:      Once.
```

Smith provides no basis to find the State did not have "a genuine good-faith belief" that testimony of repeated yelling would be produced at trial, or that his fundamental rights were substantially prejudiced. Valdivia, 95 Hawai'i at 481, 24 P.3d at 677. Thus, Smith's point is without merit.

Third, Smith claims the State misstated the evidence in closing by claiming Smith ran "full blast at her[,]" "tackled her to the ground[,]" and "block-tackled her to the ground[.]" During closing argument a prosecutor is permitted to "draw reasonable inferences from the evidence and wide latitude is allowed in discussing the evidence[,]" and presenting her impressions from the evidence. State v. Clark, 83 Hawai'i 289, 304-05, 926 P.2d 194, 209-10 (1996). At trial, CW testified that Smith "was running full blast directly at me" and that "he looked like he was going to tackle me, like -- like a football player would[.]" CW also testified that Smith threw her in the bushes, landed on top of her, and the landing knocked the wind out of her. The State's depiction in closing is not outside of its wide latitude in discussing the evidence and reasonable inferences drawn therefrom. Thus, Smith's claim is without merit.

Fourth, Smith argues the State injected personal opinion into closing argument. During closing argument a prosecutor is permitted to draw reasonable inferences from the evidence. Clark, 83 Hawai'i at 304, 926 P.2d at 209. On rebuttal, the State described, "[Pacis] yelled at him. [CW] told you something was startling him. What else would it be? Something else startling him other than [Pacis] yelling at him? No. That's ridiculous." Smith objected to personal opinion and the objection was overruled. In context, the State was responding to Smith's argument that Smith voluntarily released CW because she could not say what distracted Smith. Calling the defendant's argument ridiculous is permissible when grounded in the evidence or reasonable inferences therefrom. In full

context, the State urged the jury to "[u]se your reason and common sense[,]" to reject Smith's argument that he released CW voluntarily. Therefore, Smith's claim has no merit.

Thus, having reviewed all of Smith's allegations of prosecutorial misconduct and finding none of them to represent improper conduct, we need not conduct the harmless error analysis. State v. Mara, 98 Hawai'i 1, 16-17, 41 P.3d 157, 172-73 (2002). Smith has failed to show his appellate counsel failed to pursue an appealable issue, and, thus, did not receive ineffective assistance of appellate counsel.

Based on the foregoing, the January 12, 2017 Circuit Court of the First Circuit's Second Amended Order Dismissing Amended Petition to Vacate, Set Aside, or Correct Judgment Or to Release Petitioner from Custody Without a Hearing is affirmed.

DATED: Honolulu, Hawai'i, June 14, 2019.

On the briefs:

Dexter J. Smith,
Petitioner-Appellant, pro se.

Loren J. Thomas,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Respondent-Appellee.

Chief Judge

Associate Judge

Associate Judge